IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LARY ELZEY, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. RDB-11-2151 |
| WAL-MART ASSOCIATES, INC., *et al.*, | * |
| Defendants. | * |

\* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Larry Elzey ("Plaintiff" or "Elzey") has brought this employment discrimination action against Defendants Wal-Mart Associates, Inc., Wal-Mart Stores East, L.P. (collectively "Wal-Mart"), and Sam's East, Inc. ("Sam's Club")[1] alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* His employment was terminated on July 16, 2009 following an investigation into accusations by female coworkers that he subjected them to unwelcome physical and verbal conduct of a sexual nature. Pending before this Court is Defendants' Motion to Dismiss Plaintiff's Complaint, or, in the Alternative, for Summary Judgment pursuant to Rule 12(b)(6) and Rule 56(c) of the Federal Rules of Civil Procedure. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants Wal-Mart Associates, Inc., Wal-Mart Stores East, L.P., and Sam's East, Inc.'s Motion to Dismiss (ECF No. 13) is GRANTED.

---

[1] Plaintiff initially brought his Complaint against Sam's Club East but changed this Defendant's name to Sam's East, Inc. in his First Amended Complaint. *Compare* Pl.'s Compl., ECF No. 1 *with* Pl.'s 1st Am. Compl., ECF No. 17. The rest of the Complaint, however, refers to this Defendant as Sam's Club. *Id.*

BACKGROUND

This Court construes Defendants' motion as a motion to dismiss and as such accepts as true the facts alleged in Plaintiff's Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). In 1999, Plantiff Larry Elzey ("Plaintiff" or "Elzey") became employed with Sam's East, Inc. ("Sam's Club") at its Salisbury, Maryland location. Pl.'s 1st Am. Compl. ¶ 7, ECF No. 17. Plaintiff alleges that he was "an exemplary employee and was promoted several times." *Id.* At the times relevant to the Complaint, Plaintiff held the Assistant Manager position at the Salisbury Sam's Club. *Id.*

In his Complaint, Elzey claims that while in the Assistant Manager position, his supervisor, Paul Mann ("Mann") advised him that "he needed to 'crack down on deadbeat' employees because of 'economic conditions.'" *Id.* ¶ 8. However, in early 2009, Elzey claims that Mann informed him that "a number of employees [under his supervision] had complained that he was 'too hard on them.'" *Id.*

On July 10, 2009, after taking a day off to undergo a routine medical procedure, Elzey alleges that he was advised by a coworker that while he was out "members of Sam's Club management interviewed other employees to 'get the dirt' on him." *Id.* ¶ 9. That same day, Elzey was asked to meet with Mann and Market Manager, Joseph Sanders ("Sanders"). *Id.* ¶ 10. During that meeting, Mann and Sanders explained that female employees had accused him of sexual harassment because he had used "double entendres and other insinuations" of a sexual nature in his interactions with them. *Id.* ¶¶ 10-11

In response to this accusation, Elzey alleges that he "denied engaging in sexual harassment or other inappropriate behavior and asserted that his statements and actions had

been misconstrued." *Id.* ¶ 11. In support of this claim he alleges stating that other female employees "engaged in similar conduct without reprimand." *Id.* ¶ 12. He alleges that he specifically referred to an employee named Bessie. *Id.* However, according to him, Mann dismissed this comparison by saying "every club has a Bessie." *Id.* Elzey also alleges that he told Mann that he had witnessed two managers hugging on stage in front of a crowd during a seminar for managers and that these managers were not reprimanded. *Id.* ¶ 13. Additionally, Elzey claims having told Mann and Sanders that (1) a female coworker had grabbed his hand during a team meeting, (2) a number of his coworkers routinely gave each other backrubs and engaged in physical displays of affection, and (3) another female employee "hug[ged] her coworkers 'in order to get them to do things for her' " without facing any disciplinary measures. *Id.* Finally, Elzey alleges that despite denying engaging in inappropriate behavior and explaining that other female employees engaged in similar conduct, he was terminated on July 16, 2009. *Id.* ¶ 14.

Believing that he was terminated because of his gender, Elzey subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 15. After rejecting his claim, the EEOC issued him a Right to Sue Letter on May 10, 2011. *Id.* Elzey then filed this action alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* in this Court. See Pl.'s 1st Am. Compl., ECF No. 17. Elzey alleged his gender discrimination claim against Sam's Club as his employer. *Id.* He also alleged the same claim against Wal-Mart Associates, Inc. and Wal-Mart Stores East, L.P. ( collectively "the Wal-Mart Defendants") because according to him they "control[] the employment practices and decisions of Sam's Club and dominate[]

the operations of Sam's Club to such an extent that Sam's Club and Wal-Mart are one entity." *Id.* ¶ 5. He additionally claims that "his paychecks were tendered bearing the name "Wal-Mart" and "Wal-Mart" participated in his claim for unemployment insurance." *Id.*

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In ruling on such a motion, this Court is guided by the Supreme Court's instructions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which "require complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's *Twombly* decision articulated "[t]wo working principles" courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.

First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.) Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim.") (emphasis in original) (internal quotation marks and citation omitted). In short, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief." *Iqbal*, 556 U.S. at 664.

ANALYSIS

First, Defendants contend that Plaintiff's claims against Wal-Mart Associates, Inc. and Wal-Mart Stores East, L.P. (collectively "the Wal-Mart Defendants") should be dismissed because Elzey failed (1) to exhaust his administrative remedies against the Wal-Mart Defendants by omitting their names on the discrimination charge filed with the Equal Employment Opportunity Commission ("EEOC"), and (2) to plead sufficient facts to allege that these Defendants were his employer. Second, Defendants contend that this Court should dismiss Plaintiff's claims against Sam's East, Inc. ("Sam's Club") due to his failure to state a claim upon which relief can be granted.

I.      **The Wal-Mart Defendants**

In general, the failure to name a party on a charge filed with the Equal Employment Opportunity Commission ("EEOC") constitutes a failure to exhaust administrative

remedies. *See Alvarado v. Bd. of. Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 458-59 (4th Cir. 1988). This Court, however, has previously held that a plaintiff's failure to name a defendant in an EEOC charge does not necessarily bar the subsequent suit if "the purposes of the naming requirement were substantially met," that is if (1) defendants received fair notice, and (2) the EEOC was able to attempt conciliation. *Vanguard Justice Soc. Inc. v. Hughes*, 471 F. Supp. 670, 687 (D. Md. 1979) (internal citations omitted); *see also Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998) (citing *Alvarado*, 848 F.2d at 460). Additionally, this Court has previously applied a four-part test, referred to as the substantial identity test,[2] to determine whether a civil action can be brought against a defendant not named in the EEOC charge. Specifically, a court should consider:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
> 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
> 4) whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*McAdoo v. Toll*, 591 F. Supp. 1399, 1403 (D. Md. 1984) (citing *Vanguard Justice Soc. Inc.*, 471 F. Supp. at 688). Of these four factors, the second and third are the most important as they are

---

[2] The "substantial identity test" has not as of yet been formally adopted by the United States Court of Appeals for the Fourth Circuit. It was however cited with approval in dicta. *See Alvarado*, 848 F.2d at 461 (4th Cir. 1988).

most reflective of the two-fold purpose of the naming requirement. *Crosten v. Kamauf*, 932 F. Supp. 676, 682 (D. Md. 1996) (internal citation omitted).

In support of his claim against the Wal-Mart Defendants, Plaintiff contends that his salary checks bore the name Wal-Mart and that Wal-Mart participated in his claim for unemployment insurance. However, he asserts that he was employed solely by Sam's Club. Applying the substantial identity test to these allegations, it is conceivable that Elzey could have named the Wal-Mart Defendants at the time of the filing of his EEOC charge. It is equally conceivable that the Wal-Mart Defendants had represented to Elzey that his relationship with them was to occur through Sam's Club. In *Adamczyk v. Chief, Baltimore County Police Dep't.*, the naming requirement was held to have been met where the unnamed defendants received notice of the violation and participated in the EEOC proceedings. 952 F. Supp. 259, 263 n. 10 (D. Md. 1997); *see also Thomas v. Bet Sound-Stage Restaurant/BrettCo, Inc.*, 61 F. Supp. 2d 448, 458 (D. Md. 1999) (finding no prejudice since defendant had constructive notice of the charge). In this case, Plaintiff does not allege that the Wal-Mart Defendants participated in the EEOC proceedings or that they had constructive knowledge of the charge. While he does allege that the Wal-Mart Defendants participated in his claim for unemployment insurance, he does not allege that said participation made them aware of his gender discrimination claims. As such, the purposes of the naming requirement were not met and Plaintiff has failed to exhaust his administrative remedies as to the Wal-Mart Defendants.

Even assuming that the purposes of the naming requirement were met as to these Defendants, the typical predicate to liability under Title VII is a direct employment relationship between the plaintiff and the defendant. *See Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999). Though not dispositive, the Fourth Circuit has articulated that the following four factors are relevant for assessing the degree of a parent's control over its subsidiary: "(1) the interrelation of operations[,] (2) centralized control of labor relations[,] (3) common management[,] and (4) common ownership of financial control." *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 n. 1 (4th Cir. 1987) (internal citations omitted). The touchstone of both inquiries is substantial parental domination of the subsidiary. *Id.* In establishing that this Court should treat the Wal-Mart Defendants as an "employer," Elzey must overcome the "strong presumption" of limited liability. *Id.* at 981. This "strong presumption" reflects the acknowledgment that limited liability provides a stable and predictable business environment, thereby encouraging shareholder investment by eliminating the risk of direct liability. *Id.* at 980. *See also* Robert J. Rhee, *Fiduciary Exemption for Public Necessity: Shareholder Profit, Public Good, and the Hobson's Choice During a National Crisis,* 17 GEO. MASON L. REV. 661, 725 (2010) (observing that limited liability "decreases the cost of monitoring managers and other shareholders, increases the liquidity of shares, promotes diversification, and incentivizes managers to pursue positive net present value projects.") (internal citation omitted). Due to the importance of this enduring policy, courts generally refuse to treat a corporate parent and its subsidiary as one entity. *See Johnson*, 814 F.2d at 980–81.

In this case, Elzey generally alleges that "Wal-Mart controls the employment practices and decisions of Sam's Club." Pl.'s 1st Am. Compl. at ¶ 5, ECF No. 17. Although he does allege that "Wal-Mart" was listed on his payment checks, he fails to plead facts sufficient to establish that the Wal-Mart Defendants exercise so much control over Sam's Club's employment practices that they should be treated as one employer. There are no alleged facts suggesting that Wal-Mart "fired, promoted, . . . transferred, or supervised" either Elzey or any Sam Club employee. *See Johnson*, 814 F.2d at 982 (affirming summary judgment in favor of the defendant parent corporation when plaintiff failed to establish that parent controlled any subsidiary employee). In fact, the Complaint reflects that Elzey was terminated by two Sam's Club employees, Mann and Sanders. There are no facts plausibly suggesting that Wal-Mart exercised control over Sam's Club's daily employment operations. The Wal-Mart Defendants' involvement in his unemployment insurance claim suggests the rare disregard of corporate formality in the employment context, but that fact does not resemble the salient factors of centralized control over labor, or common management. As this court recently held, allegations supporting Wal-Mart's "excessive control" over Sam's Club are necessary for Elzey to overcome the "strong presumption" of limited liability, and his allegations do not suggest such a level of control. *See Johnson*, 814 F.2d at 981.

Elzey further argues that the Wal-Mart Defendants dominate Sam's Club's operations to the extent that this Court should treat them as one entity. Pl.'s 1st Am. Compl. ¶ 5. For this analysis, the Fourth Circuit looks to whether a subsidiary is "highly integrated with the parent's business operations." *Johnson*, 814 F.2d at 982. *See also Thomas*, 61 F. Supp. 2d 448, 456 (D. Md. 1999) (characterizing this as the "integrated enterprise" theory). Mirroring a

"piercing the corporate veil" analysis in the corporate law context, courts look to whether the parent commingled funds and/or assets with the subsidiary, uses the same work force or business offices as the subsidiary, and keeps the subsidiary undercapitalized. *Johnson*, 814 F.2d at 982.

Elzey again fails to plead sufficient facts to establish that the Wal-Mart Defendants exercise complete domination over Sam's Club such that this Court should treat them as one entity. There is no allegation of fund or asset commingling or of Sam's Club's undercapitalization. There is no allegation that the Wal-Mart Defendants (a) filed a joint tax return with Sam's Club, (b) failed to keep separate books or hold separate shareholder meetings from Sam's Club, or (c) exercised daily, supervisory control over Sam's Club. *See Thomas*, 61 F. Supp. 2d at 456. Elzey does not allege a degree of overlap plausibly establishing a unity of the corporate entities. Thus, Elzey's Complaint fails to plead facts sufficient to plausibly establish that the Wal-Mart Defendants and Sam's Club should be treated as one entity for purposes of Title VII. Accordingly, Plaintiff's claims against Wal-Mart Associates, Inc. and Wal-Mart Stores East, L.P. are DISMISSED WITH PREJUDICE.

## II.   Gender Discrimination Claim

Defendants, and specifically the remaining Defendant Sam's Club, argue that Plaintiff's Title VII gender discrimination claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cause of action. Title VII of the Civil Rights Act of 1964 ("Title VII") provides that "it shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  Additionally, it provides for "mixed-motive" liability in that "an unlawful employment practice is established when the complaining party demonstrates that . . . sex . . . was a motivating factor for any employment practice even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).  Title VII "is not a general bad acts statute" however.  *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir.), *cert. denied sub nom. Bonds v. Sebelius*, __ U.S. __, 132 S. Ct. 398 (2011).  "The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." *Jimenez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir.), *cert. denied*, 516 U.S. 944 (1995).  Nevertheless, a Title VII claim "is not a vehicle for substituting the judgment of a court for that of the employer." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998) (citation omitted).

As such, a plaintiff may allege a claim of gender discrimination under either the "burden-shifting" scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973) or the "mixed-motive" framework.  *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284-85 (4th Cir. 2004).  Under the *McDonnell Douglas* scheme, a plaintiff first bears the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  If a plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a legitimate, nondiscriminatory justification for its action. *Id.*  Finally, if the employer carries its burden,

the plaintiff must show that the employer's legitimate, nondiscriminatory reason is merely a pretext for discrimination. *Id.*

To allege a *prima facie* case of race, color, or gender discrimination under Title VII, the Plaintiff must sufficiently allege that: "(1) he is a member of a protected group; (2) he earned satisfactory performance marks; (3) he suffered an adverse employment action; and (4) other similarly situated employees outside his protected class were treated more favorably." *Prince-Garrison v. Md. Dep't of Health & Mental Hygiene*, 526 F. Supp. 2d 550, 554 (D. Md. 2007) (citing *McCain v. Waste Mgmt., Inc.*, 115 F. Supp. 2d 568, 573 (D. Md. 2000)). In this case, Elzey has sufficiently alleged that he is a member of a protected group, that his job performance was satisfactory and that he suffered an adverse employment action. Nevertheless, to be similarly situated, an employee must have "engaged in the same conduct without . . . mitigating circumstances that would distinguish [her] conduct or the employer's treatment of [her] for it." *Heyward v. Monroe*, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998) (table opinion) (quoting *Mitchell v. Toledo Hops.*, 964 F.2d 577, 583 (6th Cir. 1982)). Although the Fourth Circuit has stated that "the comparison [between offenses] will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances," *Cook v. CSZ Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993), "the similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). While Elzey claims that a number of his female coworkers engaged in inappropriate conduct similar to his own, the facts that he pleads do not indicate that (a) this conduct was necessarily of a sexual nature, (b) that it was

unwelcome and (c) that anyone complained of his female coworker's conduct. Essentially, his complaint does not allege that a female employee of Sam's Club remained employed there despite being accused of sexual harassment. Accordingly, Plaintiff fails to state a *prima facie* case of gender discrimination under Title VII.

Even if Elzey had alleged a *prima facie* claim of gender discrimination, he has not sufficiently alleged that the legitimate nondiscriminatory reason for his termination proffered by the Defendants was a pretext for discrimination. The Fourth Circuit has stated that: "when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.' " *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). A Court should not second-guess an employer's appraisal. *Hawkins*, 203 F.3d at 280. Rather, the Court's sole concern should be "whether the reason for which the defendant discharged the plaintiff was discriminatory." *Id.* (quoting *DeJarnette*, 133 F.3d at 299). The Fourth Circuit has also stated that it does "not believe that Title VII authorizes courts to declare unlawful every arbitrary and unfair employment decision." *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994). In his Complaint, Elzey not only fails to allege a *prima facie* case of gender discrimination, but fails to allege any plausible claim of pretext on the part of the Defendants. Hence, Elzey fails to allege gender discrimination under the "burden-shifting" scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973).

Alternatively, Elzey can allege a claim of gender discrimination under the "mixed-motive" approach. Under this approach, Elzey must sufficiently plead, through direct or circumstantial evidence, that his gender "was a motivating factor" in his employer's decision to terminate him. *Hill*, 354 F.3d at 284-86. Direct evidence is defined as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (internal quotations omitted). Under the mixed-motive framework, "a plaintiff faces a demanding standard when attempting to demonstrate direct evidence." *Jordan v. Radiology Imaging Assoc.*, 577 F. Supp. 2d 771, 779 (D. Md. 2008). "To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that the protected trait . . . actually motivated the employers' decision." *Hill*, 354 F.3d at 286. In *Sassaman v. Gamache*, the Court of Appeals for the Second Circuit held that there was direct evidence of gender discrimination where an employer said "you probably did what she said you did because you're male and nobody would believe you anyway" while asking an employee to resign do to sexual harassment accusations. 566 F.3d 307, 312 (2nd Cir. 2009). In his Complaint, Elzey alleges that Bessie, a female employee of Sam's Club, routinely engaged in the same conduct attributed to him. He further alleges that in response to that claim, his supervisor responded "every club has a Bessie." This statement compared to the statement in *Sassaman* is devoid of direct gender discrimination language. Moreover, Elzey does not plead any other facts that would indicate that there was direct evidence of gender discrimination.

Nevertheless, Elzey claims that there is circumstantial evidence of gender discrimination and relies on his allegations that similarly situated female employees were not subjected to disciplinary measures. However, as explained above, his comparators are not similarly situated and therefore do not provide circumstantial evidence that his employer's termination decision was motivated in part by gender. Additionally, this Court has recently held that in the context of gender discrimination actions against employers arising from a termination for sexual harassment:

> [I]t is conceivable that an employer might have a spoken or unspoken policy of crediting any claim of sexual harassment brought by a female employee, and disbelieving any male employee's denial. Or, a manager investigating a sexual harassment claim might, on the basis of gender stereotypes, be more inclined to believe a female accuser than a male accused. It so, the male employee might have a cognizable Title VII claim.

*Hooker v. Hilton Hotels Corp.*, ELH-10-3019, 2012 WL 2798768, at * 14 (D. Md. July 6, 2012). In this case, Plaintiff has not made any allegations or proffered any evidence concerning the Defendants' policies regarding sexual harassment cases. He has not alleged or proffered any evidence that denials by male employees are given less credence then female complaints nor has he alleged that the Defendants have a policy of conducting thorough investigations into sexual harassment claims brought by women but not by men making similar complaints. As a result, Plaintiff fails to allege any plausible claim that his gender was a motivating factor in the Defendants' decision to terminate his employment.

Therefore, Elzey has failed to state a claim of gender discrimination under Title VII of the Civil Rights Act of 1964 and his claim against Sam's East, Inc. is DISMISSED WITHOUT PREJUDICE. Accordingly, Defendants Wal-Mart Associates, Inc., Wal-Mart

Stores East, L.P. and Sam's East, Inc.'s Motion to Dismiss Plaintiff's Complaint (ECF No. 13) is GRANTED.

## CONCLUSION

For the reasons stated above, Defendants Wal-Mart Associates, Inc., Wal-Mart Stores East, L.P. and Sam's East, Inc.'s Motion to Dismiss Plaintiff's Complaint (ECF No. 13) is GRANTED.  Plaintiff's claim against Wal-Mart Associates, Inc. and Wal-Mart Stores East, L.P. is DISMISSED WITH PREJUDICE and his claim against Sam's East, Inc. is DISMISSED WITHOUT PREJUDICE.

A separate Order follows.


Dated:      August 28, 2012             /s/_____
                                        Richard D. Bennett
                                        United States District Judge